# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| NEAL A. LABOVE | CIVIL ACTION |
|---|---|
| VERSUS | No. 11-1405 |
| CANDY FLEET, L.L.C., ET AL. | SECTION "I" |

## ORDER AND REASONS

Before the Court is a motion[1] for summary judgment filed by third-party plaintiffs, Candy Fleet, L.L.C. ("Candy Fleet") and M/V CANDY LAND, L.L.C ("the CANDY LAND" or collectively "Candy Fleet"). Third-party defendant, Dynamic Industries, Inc., opposes the motion.[2] For the following reasons, the motion for summary judgment is **GRANTED**.

### *BACKGROUND*

Plaintiff, Neal A. Labove ("Labove"), alleges that on or about August 30, 2010, he sustained serious injuries aboard the CANDY LAND while being transported as a field service technician employed by Dynamic Industries, Inc. ("Dynamic"), to an offshore platform owned and operated by Enterprise Products Partners, L.P ("Enterprise").[3] Labove alleges that Enterprise called for Candy Fleet to transport him to the "Ship Shoals 332" platform located in the Gulf of Mexico despite its knowledge of intemperate weather conditions and rough seas between the crewboat's departure point and the platform.[4] Labove claims that he suffered serious and disabling injuries to his shoulders, neck, and back while *en route* as a result of being

---

[1] R. Doc. No. 66.

[2] R. Doc. No. 74.

[3] R. Doc. No. 1. All claims asserted by and against Enterprise Products Partners, L.P. have been dismissed with prejudice. R. Doc. Nos. 60, 67.

[4] R. Doc. No. 1. As explained below, the platform consists of two sub-platforms, SS-332A and SS-332B, which serve as gathering and transportation stations for oil and natural gas production.

tossed about and thrown upon his seat and/or the deck due to the vessel's high rate of speed and the rough seas.[5]

On June 14, 2011, Labove filed this lawsuit alleging that his injuries resulted from negligence on the part of Candy Fleet and Enterprise.[6] Candy Fleet subsequently filed a third-party complaint against Dynamic alleging that Dynamic had agreed to indemnify Enterprise and its contractors, including Candy Fleet, for claims of bodily injury asserted by Dynamic employees such as Labove.[7] The offshore call-out agreement entered into by Enterprise and Dynamic provides, in relevant part, as follows:

> "Company Group" shall mean, whether individually or collectively, Company, its parent, subsidiary and affiliated companies, its and their joint owners, co-lessees, partners, joint venturers, contractors and subcontractors (other than contractor and its contractors and/or subcontractors), together with the officers, directors, agents, consultants, insurers and employees of all of the foregoing.
>
> *Contractors Indemnification*. Contractor [Dynamic] agrees to RELEASE, DEFEND, INDEMNIFY and HOLD HARMLESS Company Group from and against any and all Claims, Losses and Expenses directly or indirectly arising out of or related to bodily injury or death of or damage to property of Contractor Group, arising out of, or related to, the performance or subject matter of this Agreement or the Ingress, egress, loading, or unloading of cargo or personnel, and expressly including any Claims, Losses and Expenses actually or allegedly caused by any negligence, fault or strict liability (of whatever nature or character) of Company Group or any other person or entity or the unseaworthiness or unairworthiness of vessels or craft, whether or not preceding the execution of this Agreement. **IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO, BOTH COMPANY AND CONTRACTOR, THAT THE INDEMNITY PROVIDED FOR IN THIS PARAGRAPH IS AN INDEMNITY BY CONTRACTOR TO INDEMNIFY AND PROTECT COMPANY GROUP FROM THE CONSEQUENCES OF COMPANY GROUP'S OWN NEGLIGENCE, FAULT OR STRICT LIABILITY, WHETHER THAT NEGLIGENCE, FAULT OR STRICT LIABILITY IS**

---

[5] *Id.*

[6] *Id.*

[7] R. Doc. No. 44.

**THE SOLE, JOINT OR CONCURRING CAUSE OF THE INJURIES OR DEATH OR PROPERTY DAMAGE (BUT EXPRESSLY EXCLUDING THE GROSS NEGLIGENCE OR WILFULL MISCONDUCT OF COMPANY GROUP).**[8]

On June 20, 2012, this Court granted Candy Fleet permission to file a timely motion for summary judgment with respect to its claim for indemnity from Dynamic pursuant to the offshore call-out agreement.[9] Candy Fleet contends that as a contractor of Enterprise, it is entitled to defense and indemnity for any injuries sustained by Labove, a Dynamic employee, including injuries resulting from its own negligence.[10] Dynamic responds that the portions of the offshore call-out agreement providing for such indemnity are void and unenforceable as a matter of public policy pursuant to the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"), La. Rev. Stat. Ann. § 9:2780.[11] For the following reasons, the Court finds that the LOAIA does not apply to the agreement at issue in this case and that Candy Fleet's motion for summary judgment must be **GRANTED**.

## *STANDARD OF LAW*

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*

---

[8] R. Doc. No. 66-6, p. 2-3.

[9] R. Doc. No. 60.

[10] R. Doc. No. 66.

[11] R. Doc. No. 74. The parties do not dispute that Louisiana law applies. The parties also do not dispute that if the LOAIA does not apply, the indemnity provision is enforceable against Dynamic.

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (internal quotation and citation omitted) (alteration in original).

## DISCUSSION

The sole issue raised in this motion for summary judgment is whether the LOAIA applies to the indemnity provision in the offshore call-out agreement and renders it void as a matter of public policy. The Louisiana legislature enacted the LOAIA in 1981 to address "inequities foisted on certain contractors" by defense or indemnity provisions contained in agreements

4

"pertaining to wells for oil, gas, or water . . . ." La. Rev. Stat. Ann. § 9:2780(A) (2005).[12] The statute provides that "[i]t is the intent of the legislature . . . to declare null and void and against public policy . . . any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee . . . ." *Id.* Indemnity provisions contained in agreements subject to the LOAIA are void and unenforceable to the extent that they run afoul of the public policy against contractual indemnification for negligence on the part of the indemnitee. La. Rev. Stat. Ann. § 9:2780(B) (2005).

The U.S Court of Appeals for the Fifth Circuit has formulated a two-part test for determining whether the LOAIA applies to a particular contract. As stated by the Fifth Circuit,

---

[12] The LOAIA provides, in relevant part, as follows:

A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee (emphasis added).

B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee (emphasis added).

C. The term "agreement," as it pertains to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.

the LOAIA will apply "if (but only if) the agreement (1) pertains to a well *and* (2) is related to exploration, development, production, or transportation of oil, gas, or water . . . ." *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 991 (5th Cir. 1992) (emphasis in original); *Fontenot v. Chevron U.S.A. Inc.*, 676 So. 2d 557, 564 (La. 1996). Because both factors must be present, "[i]f the contract does not pertain to a well, the inquiry ends. Only if we determine that the contract has the required nexus to a well may we proceed to the second step of the process . . . ." *Transcon. Gas*, 953 F.2d at 991. As the parties do not contest whether the agreement in this case is related to exploration, development, production, or transportation of oil, gas, or water, the Court will focus only on whether the agreement "pertains to a well."

Candy Fleet contends that the LOAIA does not apply to the offshore call-out agreement because the subject of the contract does not pertain to a well, but rather, to a platform designed merely to facilitate the transmission of commingled oil and gas to downstream pipelines. The Fifth Circuit has recognized that there is a point at which the subject of a contract no longer pertains to a well. The point is reached when the work relates to gas that "can no longer be identified with a particular well or if the gas becomes so fundamentally changed by processing, commingling, or preparing it for distribution to its ultimate end user that it can no longer properly be attributed to a particular well." *Johnson v. Amoco Prod. Co.*, 5 F.3d 949, 953-54 (5th Cir. 1993) (quoting *Transcon. Gas*, 953 F.2d at 994) (internal quotations and alterations omitted). "[W]ork called for in a contract to service transmission equipment transporting gas downstream from this point is not considered work that 'pertains to a well.'" *Roberts v. Energy Dev. Corp.*, 104 F.3d 782, 785 (5th Cir. 1997).

In *Transcontinental Gas*, the Fifth Circuit identified the following factors as relevant to determining the point at which a contract for services relating to a transmission system or pipeline does or does not pertain a well:

> (1) whether the structures or facilities to which the contract applies or with which it is associated, e.g. production platforms, pipelines, junction platforms, etc., are part of an in-field gas gathering system;
>
> (2) what is the geographical location of the facility or system relative to the well or wells;
>
> (3) whether the structure in question is a pipeline or is closely involved with a pipeline;
>
> (4) if so, whether that line picks up gas from a single well or a single production platform or instead carries commingled gas originating from different wells or production facilities;
>
> (5) whether the pipeline is a main transmission or trunk line;
>
> (6) what is the location of the facility or structure relative to compressors, regulating stations, processing facilities or the like;
>
> (7) what is the purpose or function of the facility or structure in question;
>
> (8) what if any facilities or processes intervene between the wellhead and the structure or facility in question, e.g., "heater treaters," compressor facilities, separators, gauging installations, treatment plants, etc.;
>
> (9) who owns and operates the facility or structure in question, and who owns and operates the well or wells that produce the gas in question; and
>
> (10) any number of other details affecting the functional and geographic nexus between "a well" and the structure or facility that is the object of the agreement under scrutiny.

*Transcontinental Gas*, 953 F.2d at 994-95. The factors bear on the requisite functional and/or geographic nexus between the subject matter of the agreement and a particular well. *Friede Goldman Offshore Texas, L.P. v. Pro. Indus. Maint., L.L.C.*, No. 01-30471, 2001 WL 1223700, at *1 (5th Cir. Sept. 27, 2001); *Verdine v. Ensco Offshore Co.*, 255 F.3d 246, 253 (5th Cir. 2001)

(collecting cases). "Whether a contract pertains to a well or to drilling requires a fact intensive case-by-case analysis." *Transcon. Gas*, 953 F.2d at 994.

When considering the *Transcontinental Gas* factors in this case, the Court must "focus specifically" on the scope of the particular agreement giving rise to the claims asserted by Labove.[13] *See Verdine*, 255 F.3d at 253; *In re Complaint of John E. Graham & Sons*, 210 F.3d 333, 341 (5th Cir. 2000) ("Under the LOAIA, this court has stressed that when the LOAIA speaks of invalidating 'agreements,' the relevant agreement is the particular work order giving rise to the claim.") (citing *Roberts*, 104 F.3d at 784, n.3). Although the offshore call-out agreement may have applied in connection with work performed by Dynamic in many contexts, the purchase order dated June 20, 2010, is the relevant agreement giving rise to the claims asserted in this matter.[14] The purchase order called for offshore hookup and installation of fabricated interconnect piping, pipe supports, meter skid, and a meter skid structural frame.[15] Accordingly, the Court will look to the scope of this particular agreement to determine whether or not it pertains to a well.

Candy Fleet submitted the affidavit of James Michael McNeer in support of its argument that the agreement does not pertain to a well.[16] According to Mr. McNeer, the SS-332 platform consists of two sub-platforms, SS-332A and SS-332B, which are junction platforms that

---

[13] *See* R. Doc. No. 66-5, p. 3.

[14] The purchase order lists the call-out agreement – EPCO, Inc. Master Service Agreement No. EPD-OP-06-019 – as a document incorporated by reference. *Id.* at p. 5.

[15] R. Doc. No. 66-5, p. 3.

[16] R. Doc. No. 66-7. Mr. McNeer attests that he has been an employee of Enterprise since 1979 and that he currently holds the position of Regional Manager for Gulf of Mexico Operations. He further states that he is familiar with the business models of Enterprise and its affiliated businesses as well as the Ship Shoal Platform 332A and 332B.

essentially serve as gathering and transportation stations for production that comes from BP Pipelines North America, BHP Billiton, Anadarko Petroleum Corporation, Murphy Oil & Gas, Flextrend Development Company L.L.C., and Helix.[17] He states that the platforms provide access for pipelines that bring oil and gas to Texas and Louisiana markets via the Poseidon pipelines and the Cameron Highway Oil Pipelines (CHOP) systems.[18] As for SS-332A, Mr. McNeer attests that there are two oil pipelines that enter from various production facilities which carry commingled oil from different wells for transportation via two departing pipelines to the Poseidon pipeline systems.[19] He states that there are also four incoming natural gas pipelines owned by Enbridge which come from various platforms (not directly from well sites) that primarily continue to the Manta Ray Offshore Gathering System via three departing pipelines.[20] As for SS-332B, Mr. McNeer attests that there are four incoming pipelines from various production facilities that carry commingled product from different wells for transportation to CHOP and other pipelines.[21] He further attests that the platforms are merely stopping points or transfer sites along the pipelines system and that the nearest well head is approximately six miles away, with others that are much further.[22] Mr. McNeer states that there are pumps instead of compressors and no processing facilities for oil services on the platforms.[23]

---

[17] R. Doc. No. 66-7, ¶ 4.

[18] *Id.* at ¶ 5.

[19] *Id.* at ¶ 8.

[20] *Id.*

[21] *Id.* at ¶ 9.

[22] *Id.* at ¶ 6.

[23] *Id.* at ¶ 10.

Dynamic does not dispute the vast majority of the information submitted in the affidavit provided by Mr. McNeer and it offers no testimony of its own to contradict his statements. Dynamic admits that Enterprise is not engaged in drilling activities, that it is a provider of midstream energy services to producers and consumers, and that other companies own the well heads that send production to the platform.[24] Dynamic also admits that product leaves various wellheads at various distances and travels to production facilities prior to arriving at the platforms.[25] Although Dynamic disputes the extent of any commingling of oil in the pipelines, it offers only unsubstantiated assertions to contradict Mr. McNeer's sworn testimony, which fails to raise a genuine issue of fact with respect to the issue of commingling.[26] *Little*, 37 F.3d at 1075 (explaining that "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence" does not sufficiently raise a genuine issue of fact).

Considering the undisputed evidence in light of the *Transcontinental Gas* factors, the Court finds that Candy Fleet is entitled to summary judgment given the lack of any functional or geographic nexus between the agreement giving rise to Labove's injuries and a well. It is readily apparent that the contract relates to work performed on junction platforms that serve as gathering and transportation stations, which are geographically and functionally distant from any well or wells. The SS-332 platforms are closely related with a system of pipelines that pick up commingled gas from distant wells and production facilities for transportation to main transmission or trunk lines. The purpose of the platforms is to facilitate the transmission of

---

[24] R. Doc. No. 74-1, p. 2.

[25] *Id.*

[26] *Id.* at p. 1-2.

commingled oil and/or natural gas from various pipelines into larger pipelines. Enterprise owns and operates the platforms apart from the owners of the wells and production facilities and no production activities take place on the platforms. Although the Fifth Circuit has cautioned against relying on a "lone affidavit" that contains insufficient information to determine with a reasonable degree of certainty whether a contract pertains to a well, *see Transcon. Gas*, 953 F. 2d at 995, the undisputed facts along with the uncontroverted affidavit of Mr. McNeer establish with the requisite degree of certainty that the contract in this case related only to product which could "no longer be identified with a particular well" and had become "so fundamentally changed by processing, commingling, or preparing it for distribution to its ultimate end user that it can no longer properly be attributed to a particular well."[27] *See id.* at 994.

This conclusion finds support from decisions of the Fifth Circuit and other U.S. District Courts. The Fifth Circuit previously held that a contract for work on a compressor station at an oil and gas facility does not pertain to a well under the LOAIA. *Johnson v. Amoco Prod. Co.*, 5 F.3d 949 (5th Cir. 1993). In *Johnson*, an individual was injured while installing and adjusting an engine and compressor at an Amoco facility which processed oil and gas produced from thirty-one Amoco wells located nearby. *Id.* at 951. All thirty-one wells were connected to the Amoco facility by one gathering line into which each well connected, and through which oil and gas became commingled before arriving at the facility. *Id.* at 954. At the facility, product from the wellheads underwent processing, including separation, scrubbing, glycol dehydration, and finally compression. *Id.* at 951. Compressed gas then left the facility in a transmission pipeline which

---

[27] For example, while similar, Mr. McNeer's testimony goes beyond the information contained in the affidavit described in *Transcontinental Gas*. Mr. McNeer affirmatively states that the product comes from distant wells, travels through production facilities owned by other companies, and is commingled before arriving at the SS-332 platforms, where it is then transported to market via main transmission pipelines.

fed into a trunk line approximately ten miles away. *Id.* The Fifth Circuit held that by the time gas reached the compressor station where the injury occurred, it could no longer be identified with a particular well, and it did not pertain to a well within the meaning of the LOAIA. *Id.* at 954.

Another district court recently assessed the application of the LOAIA to a contract for the operation and maintenance of the Grand Isle 115, an offshore platform with similar characteristics to platform SS-332. *Hughes v. Pogo Prod. Co.*, No. 06-1894, 2009 WL 667186, at *1 (W.D. La. March 11, 2009). The Grand Isle 115 platform served as a commingling station where gas from three incoming pipelines was further commingled and pumped into one pipeline destined for a refinery. *Id.* at *3. The Grand Isle 115 platform was not an active, producing well. *Id.* at *6. In addition, no well that eventually fed production through the platform was located closer than five miles from the platform, and the platform was "closely related to a pipeline," because its sole purpose was to further commingle product from incoming pipelines to larger outgoing pipelines. *Id.* For these reasons, the court concluded that claimants sufficiently demonstrated the Grand Isle 115 platform did not pertain to a well. *Id.* at *8.

In contrast, the cases upon which Dynamic relies are distinguishable as each decision rested on facts establishing a nexus with a well or wells. *See, e.g.*, *Broussard v. Conoco, Inc.* 959 F.2d 42, 45 (5th Cir. 1992) (holding that a contract for catering services pertained to a well by providing maintenance of facilities, i.e. employees and living quarters, related to in-field production); *Roberts*, 104 F.3d at 785 (holding that a work order for installing a fire safety system pertained to a well because it was installed on a production platform housing workers who maintained wells serviced by the platform); *Lloyds of London v. Transcon. Gas Pipe Line Corp.*, 101 F.3d 425, 428 (5th Cir. 1996) (holding that a contract between a painting and

sandblasting contractor and owner of natural gas pipelines pertained to a well because the contract involved work performed on a meter station connected to a well); *Verdine*, 255 F.3d at 254 (5th Cir. 2001) (holding that a contract for repairs on a dismantled fixed oil platform rig pertained to a well because services rendered were performed on a structure intended for future use in the exploration and production of oil and gas).

Finally, the Court does not find significant the fact that SS-332 used to be a production platform until the early 1990s. Dynamic relies on a paper prepared for a presentation at an offshore technology conference in 2003 for the proposition that the SS-332 platform was previously a production platform until the early 1990s.[28] Assuming this paper qualifies as competent summary judgment evidence, the fact that SS-332 was previously a production platform does not establish that a purchase order executed in 2010 pursuant to a 2006 call-out agreement "pertained to a well." *See In re Complaint of John E. Graham & Sons*, 210 F.3d at 341("Under the LOAIA, this court has stressed that when the LOAIA speaks of invalidating 'agreements,' the relevant agreement is the particular work order giving rise to the claim.") (citing *Roberts*, 104 F.3d at 784, n.3). Accordingly, because this Court determines that the agreement does not pertain to a well, Candy Fleet is entitled to defense and indemnity from Dynamic for any injuries sustained by Labove.

*CONCLUSION*

For the foregoing reasons,

**IT IS ORDERED** that the motion for summary judgment is **GRANTED**. Candy Fleet is

---

[28] R. Doc. No. 74-2. Dynamic lists as an uncontested issue of material fact its assertion that SS-332A was a producing platform until the 1990s. Dynamic lists as a contested issue of material fact whether SS-332A or SS-332B could ever return to use as a producing platform. R. Doc. No. 74-1, p. 3.

entitled to judgment as a matter of law on its third-party demand for contractual defense and indemnity against Dynamic because the LOAIA does not render the indemnity provision in the offshore call-out agreement void or unenforceable.

New Orleans, Louisiana, July 20, 2012.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**